MERROW v BOFFERDING

Docket Nos. 106331, 106332. Argued April 8, 1998 (Calendar No. 8). Decided July 31, 1998.

Greg Merrow and Julie Merrow, for themselves, and Julie Merrow, as next friend of Anthony and Brittney Merrow, minors, brought an action in the Saginaw Circuit Court against their landlords, Diane and Richard Bofferding, alleging that Greg Merrow permanently injured his arm when it broke through a pane of glass of the aluminum storm door of their residence as a result of the defendants' negligence. The court, Leopold P. Borrello, J., entered judgment on a special jury verdict for the defendants, finding that, while they were negligent, their negligence was not the proximate cause of the plaintiff's injury. The Court of Appeals, WHITE and W. E. COLLETTE, JJ. (MURPHY, P.J., dissenting), reversed in an unpublished opinion per curiam and remanded the case for a new trial, concluding that the trial court abused its discretion in allowing into evidence a disputed statement in Greg Merrow's medical record concerning the circumstances of his injury (Docket Nos. 154915, 156074). The defendants appeal.

In an opinion by Chief Justice MALLETT, joined by Justices BRICKLEY, CAVANAGH, KELLY, and TAYLOR, the Supreme Court *held*:

The contested portion of the medical record was not admissible. The disputed hearsay remark relating to causation of the injury did not qualify under any applicable exception to the hearsay rule, and a sufficient foundation was never established concerning the source of the statement.

1. Admission of the disputed portion of the medical record implicates the concept of hearsay within hearsay, consisting of the document found in the medical record and the statement in the document indicating that the injury occurred after the plaintiff had a fight with his girlfriend. Both levels of hearsay must be justified separately for admission. Because the second level of hearsay is not justified under an exception to the hearsay rule and because the defendants failed to lay a sufficient foundation regarding the source of the statement in order to allow its admission under a nonhearsay justification, the statement concerning the plaintiff's fight with his girlfriend was improperly admitted. While that part of

the statement in the medical record relating to the plaintiff's arm penetrating a plate glass window was information reasonably necessary for diagnosis and treatment and carried with it the inherent indicia of trustworthiness, the remainder of the statement relating to what occurred before the plaintiff's arm went through the window was not and, thus, falls outside the rationale underlying the exception. The trial court correctly ruled that MRE 803(4) could not be the basis for admission of the contested portion of the medical record.

2. The contested portion of the medical record was not admissible under MRE 613(b) for purposes of impeachment. A previous inconsistent statement of a witness, admissible to impeach credibility, is not regarded as an exception to the hearsay rule, because it is not offered as substantive evidence to prove the truth of the statement, but only to prove that the witness in fact made the statement. In this case, the foundation for admission was insufficient. The trial court never made a definitive ruling on whether the foundational requirement under MRE 613(b) had been met. Even if there had been a proper foundation for admission as a previous inconsistent statement, it was not admitted for impeachment purposes, but was admitted substantively and was used in defense counsel's argument on the crucial issue of causation. Nor could admission of the disputed statement be justified under MRE 801(d)(2) as an admission of a party-opponent.

3. It is evident that the jury's decision regarding proximate cause was influenced by the improperly admitted medical record, and, thus that the error in admitting the record was not harmless.

Affirmed and remanded.

Justice BOYLE, joined by Justice WEAVER, dissenting, stated that the trial court did not abuse its discretion in admitting the medical record evidence because the oral statement made to the physician may be properly admitted as a nonhearsay party admission under MRE 801(d)(2). Whether the plaintiff made the statement at issue is a disputed preliminary factual question that can be resolved by applying the preponderance of the evidence standard. In making the determination, the trial judge may consider all available evidence, including otherwise inadmissible evidence. The contested statement in the medical record is itself evidence that the statement was made by the plaintiff. Testimony that hospital policy requires the history be taken directly from the patient is sufficient to establish that the patient is more likely than not the source of the information. There is also evidence in the context of the record supporting the contention that the plaintiff was the declarant.

> Even if erroneous, there is no basis for reversal where the second level of hearsay was not objected to by the opponent of the evidence. There is also no basis for reversal where the admission of the evidence did not result in a clear miscarriage of justice. The plain error doctrine should rarely be applied in civil litigation.

*Cady, Mastromarco & Jahn, P.C.* (by *Victor J. Mastromarco, Jr.*), for the plaintiffs-appellees.

*Chasnis, Dogger & Grierson, P.C.* (by *David G. Dogger*), for the defendants-appellants.

Amicus Curiae:

*Charters, Heck, O'Donnell, Petrulis & Zorza, P.C.* (by *Eric S. Goldstein*), for Michigan Trial Lawyers Association.

MALLETT, C.J. This premises liability personal injury case involves whether a statement contained in a medical record that was relevant to causation, but that the plaintiff alleges was not reasonably necessary for diagnosis and treatment, is admissible. The defendants contend that it was properly admitted under MRE 803(6), the business record exception to exclusion of hearsay statements, and that the Court of Appeals clearly erred in reversing and remanding the case for a new trial. Alternatively, defendants believe that it was admissible for impeachment purposes under MRE 613(b) or as an admission of a party opponent under MRE 801(d)(2).

Because we conclude that the contested portion of the medical record was not admissible and that its admission was not harmless error, we affirm the Court of Appeals decision.

I

Plaintiff Greg Merrow initiated this negligence action after he sustained a serious permanent injury to his dominant arm when it broke through a pane of glass in the upper portion of the aluminum storm door at the rear of the residence he leased from defendants. The plaintiff testified that the injury occurred when he stuck out his right arm to stop the door in order to prevent it from striking his two-year-old daughter who had stepped onto the top step as he was preparing to take his wife to work. The glass broke, cutting him severely.[1] Immediately after the injury, Julie Merrow, who was married to the plaintiff at the time, used a belt as a make-shift tourniquet to control the profuse bleeding and rushed plaintiff to the emergency room at St. Luke's Hospital in Saginaw, Michigan.

This action ensued two weeks after the incident. Julie Merrow also sued individually and as next friend of the couple's two children. The trial court dismissed her individual claim before trial because the couple had divorced. It also dismissed the children's claims.[2]

Plaintiff's negligence theory during the jury trial was that the defendants breached their duty to maintain the door in a safe condition and that this breach led to the injuries. He alleged several problems with the door that caused the injuries. The hydraulic

---

[1] In addition to severed arteries, which were repaired, the plaintiff sustained nerve damage that left him with a claw-like right hand. Emergency surgery repaired the arteries. Follow-up surgery, that apparently would have repaired some of the nerve damage, was not done because of the plaintiff's lack of resources.

[2] The status of the children's claims is not raised in this appeal. Consequently, we will not address it. Throughout this opinion, our use of the term "plaintiff," in the singular, refers to Greg Merrow.

plunger did not work properly, causing the door to slam shut. Residents of the dwelling had dented the aluminum plate at the base by using their feet to keep the door from slamming. The door also had a tendency to stick on the top step of a makeshift wooden porch and then close suddenly when someone stepped on the top step. Further, the upper portion of the door was plate glass rather than safety glass or plastic as plaintiff alleges should have been used, and was affixed with sheet-metal screws and duct tape. Plaintiff alleges that defendants had been notified several times about the problems with the door before the injury occurred.

The defendants' theory was that they are not liable because Mr. Merrow's own actions caused the cut when he purposefully punched his arm through the glass. Defense counsel argued that this theory was supported by an excerpt from a document titled "History and Physical" found in plaintiff's hospital record, photographs, and testimonial inconsistencies. The trial court's admission of the excerpt from the hospital record is the focus of this appeal. It states as follows:

> This is a 23-year-old caucasian male *who was involved in a fight with his girlfriend* and subsequently put his right arm through a plate glass window, suffering a large laceration across the right antecubital fossa. [Emphasis added.]

The second page of this document was signed by Gregory M. Yasuda, M.D., and Gerardo Reyes, M.D. Apparently, Dr. Yasuda, then a resident physician, actually took the history. Dr. Reyes was the supervising physician.

Plaintiff first challenged the disputed statement in the record on the first day of trial, before jury selection, on the ground that the remark was inadmissible hearsay. Counsel emphasized that Dr. Yasuda, who had since moved from Michigan, had not been deposed or subpoenaed to testify in person. Further, counsel argued that the remark was not reliable because there was no indication of a girlfriend. The plaintiff was living with his wife at the time of the accident and she was the one who had driven him to the hospital. Counsel argued that the "fight with his girlfriend" remark was not admissible under MRE 803(4), the medical record exception to the general inadmissibility of hearsay, because it was not made for the purpose of medical treatment or diagnosis. Further, plaintiffs' counsel argued that it was not admissible under MRE 803(6) as a record kept in the course of a regularly conducted business activity, because the remark lacked the requisite level of trustworthiness required to qualify for admission under that particular hearsay exception.

After a brief recess, the trial court agreed with the plaintiff that the disputed words were not admissible under MRE 803(4). However, the court indicated that the statement might be admissible for impeachment purposes under MRE 613(b), which allows impeachment by a previous inconsistent statement of a witness, if a sufficient foundation could be established that Greg Merrow in fact had made the statement. It did not rule on this issue at that time.

During trial, plaintiff Greg Merrow denied telling hospital personnel that he was involved in a fight with his girlfriend and subsequently put his right arm through a plate glass window. Upon further question-

ing during cross-examination, he acknowledged that he and Julie Merrow had separated five and a half weeks after this incident, and that he had moved in with a girlfriend.

Out of the jury's presence, the parties again debated the admissibility of the disputed portion of the medical record. The court then ruled that defense counsel could inquire whether Greg Merrow was living with Julie Merrow at the time of the accident, or with a girlfriend, but not whether the girlfriend he joined after separating with his wife was his girlfriend while he was living in the marital home.

Julie Merrow's testimony confirmed that she had been living with the plaintiff at the time of the accident. She also confirmed Greg Merrow's testimony about the problems with the storm door.[3]

Later in the trial, defense counsel called Kimberly K. Leptich, who worked in the medical records department of St. Luke's Hospital. She explained that according to hospital protocol, a physician generally obtains the patient's history from the patient within twenty-four hours of admission. The physician dictates the history and then reviews and signs it after it is transcribed. When a resident physician obtains the history, the supervising physician would also review and sign it. Ms. Leptich also testified that the "History and Physical" is a record that is compiled and kept by St. Luke's in the regular course of business.

---

[3] Interestingly, Julie Merrow was not questioned about the source of the disputed statement contained in the medical record, nor did she testify regarding who related the history contained in the entry signed by Dr. Yasuda.

Ms. Leptich explained that Mr. Merrow's history was obtained sometime between 9:31 A.M., when he was admitted to the emergency room, and 10:50 A.M., when hospital personnel administered anesthesia in preparation for surgery. She acknowledged, however, that she had no personal knowledge of who provided the history at issue in this case. Neither could Dr. Reyes shed light on exactly who made the statement regarding the fight with a girlfriend.

Once again, the parties debated the admissibility of the contested portion of the medical record. The plaintiff's attorney again argued that the remark was not admissible because the document was not trustworthy. This time the trial court ruled the record, including the disputed statement, admissible under MRE 803(6). It reasoned that the plaintiff's objections concerned credibility and the weight to be given the statements by the jury, rather than a threshold issue of admissibility.[4] Ms. Leptich then read the record into evidence before the jury.

---

[4] The relevant exchange concerning admissibility at this stage in the proceedings was as follows:

*Mr. Mastromarco*: I'm saying that the document in addition lacks absolute trustworthiness because of the fact that there's been testimony in this case that my client was injected with narcotics at the time that he went to the emergency room. Now. . . .

*The Court*: That doesn't go to the admissibility, Mr. Mastromarco. It goes to the credibility of whether the jury is going to believe it or not. That's an argument you can make. It doesn't go to the admissibility of the documents.

*Mr. Mastromarco*: But it does go to the admissibility because 803(6) contains a provision that says that it will not be admitted if the source or method of circumstances of preparation indicate or the information indicate a lack of trustworthiness.

Now, I want to point out to the Court that this is the only evidence, the absolutely only evidence, that's been introduced on the part of the defense that has any relationship to this issue. There has been no testimony by any witnesses that there was a fight.

Using a special verdict form, the jury found that the defendants were negligent, but that their negligence was not the proximate cause of the plaintiff's injury.[5] The trial court entered judgment for the defendants and denied the plaintiff's motion for judgment notwithstanding the verdict or a new trial.

The Court of Appeals reversed, in an unpublished opinion per curiam, by a vote of two to one and remanded the case to the circuit court for a new trial.[6] The majority concluded that the trial court had abused its discretion in allowing into evidence the disputed statement in the medical record. The majority also reinstated the claims of the Merrow children. This Court granted leave to appeal,[7] and we now affirm.

---

There was no testimony that there was a girlfriend involved. I can't cross-examine Dr. Yasuda, who's out in Colorado.

This is absolutely a manifest right of my client that's being impaired. These people knew—the defense knew of Dr. Yasuda. If it was my case, I would have flown out there to Colorado and taken his dep and brought a motion in limine if this was such a critical issue for them. The fact is that they've known about it. They put it in their mediation summary.

Now, I—I don't have that duty. They've got to lay this foundation, and that document is absolutely hearsay. It's also untrustworthy. It indicates fault and they're trying to indicate under 803(6) that this belongs in evidence, and the case law says no.

*The Court*: Pursuant to MRE 803(6) the Court is admitting the document. Defendants' Exhibit 67's hereby admitted.

[5] Eight jurors heard the proofs. The parties agreed that all eight would decide the case, although in a civil action only a six-member jury is required. When the jury was polled, all eight members agreed with the negligence finding, but only seven agreed with the finding of no proximate cause.

[6] Issued January 26, 1996 (Docket Nos. 154915, 156074).

[7] 456 Mich 853 (1997).

II

Admission of the disputed portion of the medical record implicates the concept of hearsay within hearsay. MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence is inadmissible unless it comes within an established exception. MRE 802; *People v Eady*, 409 Mich 356; 294 NW2d 202 (1980).

Hearsay within hearsay, in the context of a history recorded in a medical record, is explained in 2 McCormick, Evidence (4th ed), § 293, p 279:

> Under standard practice, a trained attendant at hospitals enters upon the record a "personal history," including an identification of the patient, an account of the present injury or illness, and the events and symptoms leading up to it. This information, which may be obtained from the patient directly or from a companion, is elicited to aid in the diagnosis and treatment of the patient's injury or disease. Is this history admissible to prove assertions of facts it may contain? Two layers of hearsay are involved here, with the first being the use of the hospital record to prove that the statement was made.

We note that in this case, the two levels of hearsay consist of (1) the document itself found in the medical record labeled "History and Physical" and signed by Dr. Yasuda, and (2) the statement in the document indicating that the injury occurred after the plaintiff had a fight with his girlfriend.

Our analysis begins with the first level of hearsay, the document itself. The document itself was admissible under MRE 803(6), which provides an exception

to the hearsay rule for records of regularly conducted activity. MRE 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, *unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.* The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. [Emphasis added.]

The defense, through the testimony of Ms. Leptich, established that the "History and Physical" is a record that is compiled and kept in the regular course of business by the hospital. Consequently, we find that the document itself was admissible under MRE 803(6).

However, not every statement contained within the document is admissible merely because the document as a whole is one kept in the regular course of business. Where, as here, the document contains a contested hearsay statement, a separate justification must exist for its admission, i.e., it must qualify under an exception to the hearsay rule or be properly admissible as nonhearsay.[8]

---

[8] Although the exception for records of regularly conducted activity can itself justify admission of a hearsay statement contained in a business record, this is only true where the source of the statement is also acting within the course of business. See *Hewitt v Grand Trunk W R Co*, 123 Mich App 309, 324-325; 333 NW2d 264 (1983); *Moncrief v Detroit*, 398

We conclude that because the second level of hearsay is not justified under an exception to the hearsay rule and because the defendants failed to lay a sufficient foundation regarding the source of the statement in order to allow its admission under a nonhearsay justification, the statement concerning the "fight with his girlfriend" was improperly admitted.

III

In analyzing the second level of hearsay, we will first turn our attention to the medical records exception.[9]

A. MEDICAL RECORD EXCEPTION—MRE 803(4)

Regardless of the availability of the declarant as a witness, MRE 803(4) allows admission of

> [s]tatments made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

This Court has noted that exceptions to the hearsay rule, including the medical records exception, are jus-

---

Mich 181, 189-190; 247 NW2d 783 (1976). In other words, a foundation must be laid establishing that the source of the statement was acting in the regular course of business when making the statement. As noted in *Hewitt,* "This foundational element is critical as the business records exception is premised on the assumption that the statements of a declarant acting in the regular course of his or her business are inherently trustworthy." *Id.* at 325. Concerning the contested statement in the medical record, this foundational requirement was not met.

[9] While the defendants argue that other exceptions also apply, for example the exception for present sense impressions, MRE 803(1), we find that none of these even arguably apply. Consequently, they will not be discussed further.

tified by the belief that the particular categories of hearsay covered by the exceptions are both necessary and inherently trustworthy. See *Solomon v Shuell*, 435 Mich 104, 119; 457 NW2d 669 (1990); *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). Specifically, this Court has explained that the "supporting rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *Solomon, supra* at 119.

The trial court, relying on *Bradbury v Ford Motor Co*, 123 Mich App 179, 187; 333 NW2d 214 (1983), modified on other grounds 419 Mich 550; 358 NW2d 550 (1984), ruled that the contested portion of the medical record concerning the fight with a girlfriend was not admissible under this hearsay exception because it was not reasonably necessary for diagnosis and treatment. We agree.

*Bradbury* involved a products liability claim brought by an individual who was injured after he got out of a parked car and it began to unexpectedly roll in reverse. His leg was pinned between the car and a light pole while he was attempting to reach the car's controls. The plaintiff had testified that he placed the gear selector in park before getting out of the vehicle. The Court of Appeals ruled that an excerpt in the medical record, which related that the plaintiff said he did not place the shift selector in park, was inadmissible under MRE 803(4). The Court reasoned that "[w]hile a doctor may need to know that a leg was crushed, or was pinned between a moving car and a post, the plaintiff's actions in setting the shift selector

are medically irrelevant and, therefore, do not fall within this hearsay section." *Bradbury, supra* at 187.

We agree with this reasoning and find it applicable here. The statement in the medical record relating that the plaintiff's injury resulted from his arm going through a plate glass window was information reasonably necessary for diagnosis and treatment. This statement carries with it the inherent indicia of trustworthiness in accordance with the rationale underlying the medical records exception. However, the statement in the medical record relating what occurred before the plaintiff's arm went through the window, i.e., he had a fight with his girlfriend, was not reasonably necessary for diagnosis and treatment and, thus, falls outside the rationale underlying the exception. Consequently, we find that the trial court correctly ruled that MRE 803(4) could not be the basis for admission of the contested portion of the medical record.[10]

---

[10] Defendants argue that the category of information reasonably necessary for diagnosis and treatment is broad and encompasses the disputed statement at issue. They contend that the disputed statement clearly indicates that an injury followed a fight and would have alerted medical personnel to the possibility of alcohol or drug use. Consequently, they argue, the statement was reasonably necessary for diagnosis and treatment of a possible drug or alcohol problem. We find this a stretch. The plaintiff, at the time this entry in the hospital record was made, sought emergency treatment for serious injuries to his arm. To suggest that the physician taking the history and conducting the physical included the contested statement because of a concern for possible drug or alcohol use is tenuous.

Further, while it might sometimes be important to know the exact circumstances surrounding an injury, for example to discern the trajectory and speed of the force inflicting an injury to a joint, that is not the case here.

## B. NONHEARSAY JUSTIFICATIONS

Defendants argue that the trial court did not err in admitting the contested portion of the medical record because it qualifies as a previous inconsistent statement of a witness, admissible for purposes of impeachment under MRE 613(b).[11]

A previous inconsistent statement of a witness, admissible to impeach credibility, is not regarded as an exception to the hearsay rule because it is not offered as substantive evidence to prove the truth of the statement, but only to prove that the witness in fact made the statement. *People v Rodgers*, 388 Mich 513; 201 NW2d 621 (1972).

We first note that there are foundational problems concerning admission of the statement under this rule. The trial court indicated that the statement contained in the record might properly be admitted for purposes of impeachment under this rule if it could be established that Mr. Merrow actually made the statement contained in the hospital record. Because the statement was later admitted under MRE 803(6), the trial court never made a definitive ruling on whether the foundational requirement under MRE 613(b) had been met.

The only evidence offered that Mr. Merrow made the statement was the testimony of Ms. Leptich, who could only speculate that the statement came from

---

[11] MRE 613(b) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

the patient, Mr. Merrow, because this was the regular course of practice. She specifically testified that she had no personal knowledge that Mr. Merrow had in fact made the statement or who Dr. Yasuda had in fact taken the history from. This foundation is insufficient.[12]

Further, even if there had been a proper foundation for admission as a previous inconsistent statement, the fact remains that the contested statement was not admitted for impeachment purposes, but was admitted substantively and was used in defense counsel's argument on the crucial issue of causation. Consequently, even absent the lack of a proper foundation, we could not uphold the statement's admission under this rule.[13]

---

[12] Two Court of Appeals cases serve well to illustrate the foundational requirements for impeachment under MRE 613(b). The first, *Bradbury, supra,* provides an example of a proper foundation. In that case, the plaintiff contended that the trial court erroneously admitted a statement contained in his "patient history" that refuted his trial testimony. The Court of Appeals held that the statement was properly admissible for impeachment purposes as a previous inconsistent statement. A hospital employee's testimony that the history was taken from the plaintiff himself was sufficient to render the statement admissible.

The second case, *Durbin v K-K-M Corp,* 54 Mich App 38; 220 NW2d 110 (1974), provides an example of insufficient foundation. In *Durbin,* the trial court allowed a portion of a deposition to be read into evidence for purposes of impeachment. The contested portion of the deposition referred to a written statement allegedly made by the deposing witness to an investigator. The witness denied having made the statement. The Court of Appeals held that because the witness was unavailable at trial for cross-examination and it had not been shown that the statement made to the investigator was the witness' statement for impeachment purposes, admission of the contested portion of the deposition was error.

The attempts at establishing a foundation in this case are similar to the attempt in *Durbin.* Because there was no direct evidence to verify who made the disputed statement and the person who recorded the statement did not testify, the efforts at establishing a foundation for admission under MRE 613(b) failed.

[13] The dissent criticizes our analysis of MRE 613(b), insisting that MRE 613(b) is inapplicable because it views the contested statement as an

Finally, admission of the disputed statement cannot be justified under MRE 801(d)(2), which allows as nonhearsay, an admission by a party-opponent. MRE 801(d)(2) allows admission of a statement offered against a party when it is the party's own statement, in either an individual or a representative capacity. However, as already discussed, the defendants failed to establish a sufficient foundation concerning the source of the recorded statement. A statement cannot be used as a party admission unless the party made the statement. Because there was insufficient evidence offered to establish that the plaintiff, or for that matter his ex-wife, made the statement, its admission was improper.[14]

---

admission. While we agree that the requirements of MRE 613(b) do not apply to party admissions, we do not agree that the contested statement is admissible as an admission, as next explained in this opinion. Further, the dissent presumes that the statement was made by a party-opponent, i.e., Mr. Merrow. As explained in this opinion, the source of the statement was not established.

[14] We disagree with the dissent's view that there is sufficient evidence showing that the statement was made by Mr. Merrow. The only evidence that the plaintiff made the statement was the fact that the statement appeared in the document contained in the medical record and Ms. Leptich's testimony regarding hospital protocol. The document itself does not identify the source, and the recorder of the statement, Dr. Yasuda, was not deposed. Consequently, we cannot agree that the defendants have established by a preponderance of the evidence that Mr. Merrow made the statement. Additionally, the dissent's reliance on *Bradbury v Ford Motor Co*, 123 Mich App 179, 188; 333 NW2d 214 (1983), is misplaced. In contrast to the foundation laid in *Bradbury*, where an employee testified that the statements in the history were actually made by the patient to an intern, no employee testified that Mr. Merrow was the source of the contested statement at issue here.

Further, we find the dissent's focus on the abuse of discretion standard a bit curious. The dissent begins by stating that this Court's review of evidentiary matters is for an abuse of discretion. Further in the analysis, however, the dissent appropriately reviews whether the statement was admissible pursuant to MRE 801(d)(2) under a preponderance of the evidence standard.

### IV. HARMLESS ERROR

An error in the admission of evidence will be found if it affects a substantial right of a party. MRE 103. Further, such an error is not harmless if the error was prejudicial. An error in the admission or exclusion of evidence is ground for granting a new trial if refusal to take this action appears inconsistent with substantial justice. MCR 2.613(A); *People v Mateo*, 453 Mich 203, 214; 551 NW2d 891 (1996).

Although the defendants contend that the core of their argument concerning causation was based on the impossibility of the plaintiff's version of the events, given the physical evidence of the location of the broken glass and blood, our review of the record indicates otherwise.[15] We agree with the Court of Appeals analysis and conclusion that there was error and that it was not harmless:

> There is no question in this case that the error was not harmless and that it affected a substantial right. This testimony provided the key evidence in support of defendant's theory that the injury was received by plaintiff's deliberate

---

The defendants have similarly focused on the abuse of discretion standard in their argument to this Court. They argue that the Court of Appeals clearly erred in determining that the trial court abused its discretion in allowing the evidence. We agree that a trial court's determination of admissibility under MRE 801(d)(2) should not be overturned absent an abuse of discretion. That, however, is not the issue presented here. The trial court did not make a ruling regarding admissibility under that rule. Consequently, because the issue is one of law, this Court is free to make this determination. We emphasize that we are not addressing whether, had the trial court ruled on the sufficiency of the foundation for admission under MRE 801(d)(2) and concluded that a proper foundation was laid, we would conclude that this determination was an abuse of discretion.

[15] We find this evidence to be inconclusive. Although defense counsel also relied on this physical evidence in closing argument, the medical record evidence was crucial and provided the most convincing support for the defendants' causation argument.

action in putting his arm through the glass. While defense
counsel relied on physical evidence to support his argument
that the injury was received in this fashion, plaintiff's state-
ment provided the core of the argument. Plaintiff is there-
fore entitled to a new trial. [Slip op at 4.]

The conclusion that the error was not harmless is
especially evident considering the jury's answers on
the special verdict form. The jury specifically found
that the defendants were negligent, but that their neg-
ligence was not the proximate cause of the injury. We
think it evident that the jury's decision on proximate
cause was influenced by the improperly admitted
medical record evidence.[16]

### V. CONCLUSION

The disputed hearsay remark relating to causation
of the injury was not admissible because it did not
qualify under any applicable exception to the hearsay
rule and because a sufficient foundation was never
established concerning the source of the statement
regarding the fight with the girlfriend. Further, its
admission was not harmless error.

For these reasons, we affirm the Court of Appeals
decision and remand the case for a new trial.

---

[16] We also note that the dissent's argument that the admissibility of the
hearsay statement was not preserved because the plaintiff did not raise
the proper grounds for objection lacks merit. This Court is analyzing the
statement's admissibility as a party admission only pursuant to the harm-
less error doctrine. If the statement were properly admissible as a party
admission or under some other justification, then reversal would be
improper. The opponent of the evidence objected on the ground of hear-
say and argued that the contested statement was not admissible under the
business record exception because it did not come within that exception.
This was sufficient to preserve the issue for appellate review.

BRICKLEY, CAVANAGH, KELLY, and TAYLOR, JJ., concurred with MALLETT, C.J.

BOYLE, J. (*dissenting*). Because I find that the trial court did not abuse its discretion in admitting the medical record evidence, I dissent.

The Court reviews a trial court's determination of the admissibility of evidentiary issues for an abuse of discretion.[1] In reviewing evidentiary issues, we are mindful that

> "close questions arising from the trial judge's exercise of discretion on matters concerning the admission of evidence do not call for appellate reversal because the reviewing justices would have ruled differently. Reversal is warranted only if the resolution of the question by the trial court amounted to an abuse of discretion. The decision upon a close evidentiary question by definition ordinarily cannot be an abuse of discretion."[2]

The second hearsay event, the oral statement made to the physician, is properly admitted as a nonhearsay party admission under MRE 801(d)(2). An admission is "simply words or actions inconsistent with the

---

[1] *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996), citing *People v Perkins*, 424 Mich 302, 308; 379 NW2d 390 (1986). *People v Bahoda*, 448 Mich 261, 289, n 57; 531 NW2d 659 (1995), explained the abuse of discretion standard:

> "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." [*Id.*, quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).]

[2] *Bahoda, supra* at 289, quoting *People v Golochowicz*, 413 Mich 298, 322; 319 NW2d 518 (1982).

party's position at trial, relevant to the substantive issues in the case, and offered against the party."[3]

While most hearsay exceptions are grounded on a probability of trustworthiness, "the admissibility of an admission made by the party himself does not rest upon a notion that the circumstances in which it was made furnish the trier of fact with adequate means of evaluating the statement."[4] This is because the out-of-court declarant, the party-opponent, "has but to take the stand" to subject the statement "to the safeguard of cross-examination."[5] The Advisory Committee Notes to FRE 801(d)(2) state:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. . . . No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

Whether plaintiff made the statement at issue is a disputed preliminary factual question. As with any

---

[3] 2 McCormick, Evidence (4th ed), § 254, p 142.

[4] 4 Weinstein & Berger, Evidence, ¶ 801(d)(2)[01], p 801-232. 31 Graham, Federal Practice & Procedure (1997 interim ed), § 6715, p 149, n 3. "Under this view, admissions need not satisfy the traditional requirement for hearsay exceptions that they possess circumstantial guarantees of trustworthiness. Rather, admissions are simply classed as nonhearsay and outside the framework of exceptions to the hearsay rule." See *Peoples v State*, 928 SW2d 112, 117 (Tex App, 1996); *State v Palmer*, 507 NW2d 865 (Minn, 1993).

[5] 5 Weinstein, Federal Evidence (2d ed), § 801.20[1], p 801-36.

preliminary factual question of admissibility under
MRE 104(a), the condition is met if it is more likely
than not that the fact occurred. Disputed preliminary
questions of fact are resolved by a preponderance-of-
the-evidence standard.[6] In making the determination,
the trial judge may consider all available evidence,
including otherwise inadmissible evidence.[7]

The contested statement in the medical record,
which on its face purports to have been made by a
person with knowledge of the facts, is itself evidence
that the statement was made by the plaintiff.[8] There is
also evidence in the context of the medical record
supporting the contention that Mr. Merrow was the
declarant.[9] The medical record reports that the plain-
tiff was alert and oriented at the time the history and
physical examination was conducted. Furthermore,
the testimony of Ms. Leptich revealed that hospital

---

[6] *Bourjaily v United States*, 483 US 171, 175; 107 S Ct 2775; 97 L Ed 2d
144 (1987) ("We are therefore guided by our prior decisions regarding
admissibility determinations that hinge on preliminary factual questions.
We have traditionally required that these matters be established by a pre-
ponderance of proof. . . . Thus, the evidentiary standard is unrelated to
the burden of proof on the substantive issues, be it a criminal case . . . or
a civil case. . . . The preponderance standard ensures that before admit-
ting evidence, the court will have found it more likely than not that the
technical issues and policy concerns addressed by the Federal Rules of
Evidence have been afforded due consideration").

[7] MRE 104(a) states that "[i]n making its determination [the court] is
not bound by the Rules of Evidence except those with respect to
privileges."

[8] See *Bourjaily*, n 6 *supra*, pp 176-181. *Bourjaily* held that Rule 104(a)
permits a court to consider the statements sought to be admitted in deter-
mining whether the preliminary requirements of a rule have been met. See
also *United States v Martinez de Ortiz*, 907 F2d 629, 635 (CA 7, 1990)
("*Bourjaily* holds that Rule 104[a] abolished the anti-bootstrapping rule,
and the evidence comfortably satisfies the preponderance standard under
Rule 104[a]").

[9] Within the same document, under the "past history" section of the
record, it states that "[h]e denies any medications" and "[h]e denies any
prior surgeries." (Emphasis added.)

protocol required that the physician obtain the medi-
cal history directly from the patient.[10] Under a pre-
ponderance-of-the-evidence standard, there is suffi-
cient evidence showing that the statement was made
by Mr. Merrow. Factors cited by the majority, such as
the administration of narcotic analgesics, are relevant
only to the weight of the evidence, not to its
admissibility.

Assuming arguendo that the admission of the con-
tested statement was erroneous, we note that the
statement was admitted by the trial court and argued
by the parties pursuant to MRE 803(6). The majority
properly finds that the medical record is admissible

---

[10] The majority disagrees that the preponderance of the evidence stan-
dard has been met because the "only" evidence is the statement itself and
the testimony of Ms. Leptich regarding the hospital protocol that a patient
history be obtained directly from the patient, as required by JCHO regula-
tions. However, where a hospital employee testifies "that the 'patient his-
tory' was derived from the patient's (plaintiff's) statements" to a physician,
there is sufficient evidence to "support a finding that the plaintiff made
the statement . . . ." *Bradbury v Ford Motor Co*, 123 Mich App 179, 188;
333 NW2d 214 (1983), modified on other grounds 419 Mich 550; 358 NW2d
550 (1984). Contrary to the majority's reading of the above-quoted pas-
sage, I fail to see that the hospital employee in *Bradbury* had actual first-
hand knowledge that "the statements in the history were actually made by
the patient . . . ." *Ante* at 633, n 14. I read that portion of the opinion to
hold that where a patient history is derived from the patient as a matter of
customary hospital procedure, it is sufficient to establish that the patient
is more likely than not the source of information.

There is also evidence in the context of the record itself, aside from the
contested statement, tending to show that the patient was alert, oriented,
and an active participant in the history and examination. The majority
seems to insist on a higher quantum of proof that is not warranted by
MRE 104. See *Bourjaily*, n 6 *supra*. See also *Huddleston v United States*,
485 US 681; 108 S Ct 1496; 99 L Ed 2d 771 (1988).

The fact that the document does not attribute the statement to the
plaintiff is not outcome determinative. Actual ascription would certainly
be additional evidence tending to establish the preliminary fact, but does
not diminish the utility of the other factors in finding that it is more likely
than not that the plaintiff made the statement. Furthermore, there is
nothing within either MRE 803(6) or 801(d)(2) that would require that Dr.
Yasuda be deposed in order to render the contested statement admissible.

under the business records exception. However, the multiple hearsay issue was not raised by the opponent of the evidence. MRE 103 requires that evidentiary errors affect a "substantial right" of a party;[11] in addition, "a timely objection or motion to strike" must appear in the record, "stating the specific ground of objection, if the specific ground [is] not apparent from the context."[12] Even if the admission of the statement was erroneous, the issue of the second level of hearsay was not preserved for appellate review.[13]

---

[11] "[T]he plain error doctrine should be applied only where the 'error [is] so serious and flagrant that it goes to the very integrity of the trial.'" *Brenner v World Boxing Council*, 675 F2d 445, 456 (CA 2, 1982). "Plain error . . . is a rare species in civil litigation; it will be found only 'to prevent a clear miscarriage of justice.'" *Gay v P K Lindsay Co, Inc*, 666 F2d 710, 712, n 1 (CA 1, 1981). McCormick notes that reversals based on plain error are rare in civil cases because "liberty and life are not involved." 1 McCormick, Evidence (4th ed), § 52, p 212. "Many of the reasons given for the use of the 'plain error' doctrine are simply not applicable in civil cases." 21 Wright & Graham, Federal Practice & Procedure, § 5043, p 236.

[12] MRE 103(a)(1). Where an objection is not raised below, it is waived on appeal. *People v Furman*, 158 Mich App 302; 404 NW2d 246 (1987); see also *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).

McCormick notes that "[i]f the administration of the exclusionary rules of evidence is to be fair and workable the judge must be informed promptly of contentions that evidence should be rejected, and the reasons therefor. *The initiative is placed on the party, not on the judge.*" 1 McCormick, n 11 *supra*, § 52, p 200 (emphasis added).

[13] Even if one were to further assume that the issue was preserved for appellate review, I believe that the case should not be reversed because there has been no miscarriage of justice. See n 11. The plaintiff, the purported out of court declarant, testified, was cross-examined, and wholly denied making the statement. Another medical record made after surgery containing a hearsay statement made by the plaintiff to a nurse that supported plaintiff's version of the incident was also admitted. Mitigating factors, such as substantial blood loss, the administration of narcotic analgesics, and the fact that the plaintiff was married at the time of the incident were presented to the finders of fact. Under the facts of this case, there has been no miscarriage of justice requiring reversal.

The majority further errs in evaluating the admissibility of the out-of-court statement under MRE 613(b) because the rule is simply inapplicable to party admissions. The plain language of the rule states that "[t]his provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2)."[14] This is because admissions are substantive evidence, not merely impeaching statements, and "no preliminary foundation need be laid by examining the declarant concerning the admission . . . ."[15]

Because I believe that there is competent evidence in the record and that the trial court did not abuse its discretion in admitting the contested statement in the medical record, I would reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

WEAVER, J., concurred with BOYLE, J.

---

[14] The heading of Rule 613 describes the rule as pertaining to "prior statements of witnesses." Obviously, plaintiff is not a witness in this case; rather, he is a party. The plain language of the heading, combined with the unambiguous language of the last sentence of MRE 613(b), precludes analysis of the contested statement under this evidentiary rule.

[15] 31 Graham, Federal Practice & Procedure, n 4 *supra*, § 6715, p 151. See *United States v Kenny*, 645 F2d 1323, 1340 (CA 9, 1981).