*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PARAMOUNT PHYSICAL REHAB, LLC,
NORTHLAND RADIOLOGY, INC., GREATER
COMFORT DME, LLC, and A TO Z RIDE, LLC,

UNPUBLISHED
October 16, 2024
10:45 AM

       Plaintiffs-Appellants,

v

No. 368957
Wayne Circuit Court
LC No. 22-014343-NF

LIBERTY SURPLUS INSURANCE
CORPORATION,

       Defendant-Appellee.

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

In this no-fault action, plaintiffs, Paramount Physical Rehab, LLC (Paramount), Northland Radiology, Inc. (Northland), Greater Comfort DME, LLC (Greater Comfort), and A to Z Ride, LLC (A to Z) (collectively, the provider plaintiffs), appeal by right the trial court's order granting summary disposition in favor of defendant, Liberty Surplus Insurance Corporation (Liberty). On appeal, the provider plaintiffs argue that the trial court erred by granting summary disposition in favor of Liberty because there was a factual question regarding causation, and MCL 500.3157 did not limit the amount they could charge for the insured's medical treatment. With the exception of A to Z, the provider plaintiffs established a genuine issue of material fact that the insured's treatment was causally related to the traffic collision at issue, and the fee schedule caps set forth in MCL 500.3157 did not justify summary disposition on the whole. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

In June 2021, Joshua Cotton was involved in a head-on traffic collision while riding as one of two passengers in a Lyft ride-share vehicle which Brian Thomas owned and drove. According to the police report, the collision occurred on a one-way road with a posted speed limit of 25 miles per hour. Thomas's vehicle was stationary when another vehicle struck it head-on. The other vehicle's driver then fled on foot. Thomas's vehicle sustained disabling damage, but its airbags

did not deploy. Cotton and Thomas did not show signs of injury at the scene, but the other passenger complained of foot pain and later received medical treatment at the Detroit Medical Center. At the time of the traffic collision, Liberty insured Thomas's vehicle through a commercial insurance policy issued to Lyft, Inc.

The provider plaintiffs filed a single-count complaint against Liberty seeking reimbursement for medical treatment and services they provided to Cotton. They alleged that Cotton sustained "severe and debilitating injuries" in the June 2021 traffic collision and benefited from Liberty's no-fault insurance policy in effect on that date. They further alleged that, under Michigan's no-fault act, MCL 500.3101 *et seq*., they were entitled to direct reimbursement from Liberty. They sought $22,495 for Paramount, $63,775 for Northland, $23,625 for Greater Comfort, and $22,495 for A to Z.

Before discovery closed, Liberty moved for summary disposition under MCR 2.116(C)(10). Liberty raised four essential arguments. First, it argued that Cotton was injured in a separate, earlier traffic collision that took place in August 2020, and the provider plaintiffs had no evidence that Cotton's alleged injuries were caused by the June 2021 traffic collision. Second, Liberty argued that the provider plaintiffs' claims failed because they were derivative of Cotton's original claim, which the trial court previously dismissed. Third, Liberty contended that the provider plaintiffs failed to present evidence that their alleged fees were reasonable or otherwise fell within the fee schedule caps in MCL 500.3157. And finally, it argued that the provider plaintiffs failed to establish that Liberty was first in the order of priority of insurers required to provide no-fault benefits on Cotton's behalf.

In support of its motion, Liberty presented a confidential settlement agreement and release executed by Cotton in June 2022, related to the other accident. The document stated that in August 2020, Cotton was involved in a separate traffic collision. Cotton filed suit against multiple entities seeking no-fault benefits in relation to that traffic collision. The parties to that lawsuit ultimately reached a settlement, and Cotton agreed to release all of his claims against the named entities in exchange for $4,000.

Liberty also presented multiple letters its attorney and claims representative sent Cotton between June 2021 and January 2022. They both sought information regarding Cotton's injuries and medical treatment stemming from the June 2021 traffic collision. Cotton did not provide the information requested by Liberty and did not appear for multiple scheduled examinations under oath.

Liberty further presented evidence regarding Cotton's own lawsuit against it, wherein he attempted to recover no-fault benefits for injuries allegedly stemming from the June 2021 traffic collision. The trial court granted Liberty's summary disposition motion in that case and dismissed Cotton's lawsuit. According to Liberty, the trial court granted its summary disposition motion because Cotton failed to respond.

In response to Liberty's summary disposition motion, the provider plaintiffs raised three essential counterarguments. First, they argued that Cotton's medical records established a genuine issue of material fact as to whether his injuries were caused by the June 2021 traffic collision. Second, they argued that Cotton's lack of cooperation in Liberty's investigation was not an

independent basis for summary disposition. And third, they argued that MCL 500.3157 did not cap the amount medical providers could charge for services but instead capped the amount they could be reimbursed for services such that the statute did not provide a basis for summary disposition.

In support of their response, the provider plaintiffs provided records of Cotton's treatment and therapy with Paramount, Northland, and Greater Comfort. They did not provide similar records from A to Z. First, the provider plaintiffs presented Cotton's physical therapy records from Paramount, which reflect that he began physical therapy five days after the June 2021 traffic collision. Cotton reported pain in his neck, back, right shoulder, and right leg. His physical therapist diagnosed him with multiple conditions. Cotton continued physical therapy until at least November 2021.

Next, the provider plaintiffs presented Cotton's Northland records. The records reflect that Cotton received physical examinations and diagnostic imaging at Northland in September and October 2022. Cotton's diagnostic imaging revealed several conditions. Cotton's radiologist did not specifically opine as to whether any of the conditions were caused or exacerbated by the June 2021 traffic collision but noted in his impressions that the June 2021 traffic collision occurred, and Cotton had a whiplash injury.

The provider plaintiffs further presented Cotton's Greater Comfort medical equipment records. The records reflect that in June 2021, Greater Comfort delivered a thermal compression device to Cotton's home in accordance with a prescription for thermal compression therapy from Cotton's physician. The provider plaintiffs also presented Cotton's medical records from other nonparty medical providers, which include certificates reflecting Cotton's disability diagnoses between January 2022 and June 2022.

The provider plaintiffs also presented Cotton's application for no-fault benefits from Liberty. On the application, Cotton stated that he experienced neck pain, back pain, knee pain, and ankle pain caused by the June 2021 traffic collision. As part of his application, Cotton completed a statement of other liability insurance, wherein he stated that he did have any other applicable insurance policies.

The trial court ultimately entered an order granting Liberty's summary disposition motion. The trial court ruled on the motion without oral argument and did not address its reasoning in its written order. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering a motion under MCR 2.116(C)(10), the trial court must "consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). The trial court may only grant the motion if there is "no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

Summary disposition is generally premature if granted before the parties complete discovery on a disputed issue. *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 723; 909 NW2d 890 (2017). A party contending that summary disposition is premature must establish that further discovery "presents a fair likelihood of uncovering factual support for the party's position." *Id*. at 723-724 (citation omitted). To do so, the party must identify a disputed issue before the court and support their position on the issue with some form of independent evidence. *Bellows v Delaware McDonalds Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994).

## III. LAW AND ANALYSIS

### A. CAUSATION

With the exception of A to Z, the provider plaintiffs established a genuine issue of material fact that Cotton's medical treatment and services treatment were causally related to the June 2021 traffic collision. To the extent that the trial court granted Liberty's summary disposition motion based on the other provider plaintiffs' failure to establish a genuine issue of material fact regarding causation, it erred.

Initially, the trial court failed to articulate the basis or bases underlying its order granting Liberty's summary disposition motion. Our court rules provide that "[f]indings of fact and conclusions of law are unnecessary in decisions on motions unless findings are required by a particular rule." MCR 2.517(A)(4). The trial court granted Liberty's summary disposition motion under MCR 2.116(C)(10). Because MCR 2.116(C) does not require the trial court to make specific findings when ruling on a summary disposition motion, its failure to articulate its reasoning does not necessarily provide an independent basis for reversal. See MCR 2.517(A)(4).

Regarding the merits of the issue, "[l]iability for no-fault personal protection benefits is governed by MCL 500.3105." *Detroit Med Ctr v Progressive Mich Ins Co*, 302 Mich App 392, 394; 838 NW2d 910 (2013) (quotation marks and citation omitted). MCL 500.3105(1) provides that a personal injury protection (PIP) insurer "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). And under MCL 500.3112, a healthcare provider "may make a claim and assert a direct cause of action against an insurer . . . to recover overdue benefits payable for charges for products, services, or accommodations provided to an injured person." *Id*. A healthcare provider may prevail on a direct cause of action against an insurer even if an insured is unable or unwilling to testify in support of its claim. See *Central Home Health Care Servs v Liberty Mut Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2022 (Docket No. 359826), p 3 (explaining that the trial court erroneously granted summary disposition

-4-

because it neglected to consider all of the record evidence and instead "focused solely on the lack of available testimony from [the insured] . . . .").[1]

Here, the parties dispute that the provider plaintiffs presented sufficient evidence to establish a genuine issue of material fact as to whether Cotton's alleged injuries and medical treatment were causally related to the June 2021 traffic collision. Yet, they do not address the sufficiency of the evidence supporting A to Z's claim against Liberty in isolation of the other provider plaintiffs. A to Z's alleged billing statement does not contain specific reference to A to Z, and the provider plaintiffs did not present other records evidencing services A to Z provided to Cotton. Ordinarily, this Court does not address issues not raised below or on appeal, or issues that were not decided by the trial court. *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004). "However, this Court possesses the discretion to review a legal issue not raised by the parties." *Id*. (citation omitted). The record reflects that the provider plaintiffs failed to establish a genuine issue of material fact as to whether Cotton's alleged treatment at A to Z was causally related to the June 2021 traffic collision. Therefore, we exercise our discretion to affirm the trial court's summary disposition order with respect to A to Z, only.

The other provider plaintiffs, however, supported their response to Liberty's summary disposition motion with the police report from the June 2021 traffic collision, select medical records, and Cotton's application for no-fault benefits. The police report reflected that on June 2021, Cotton was involved in a head-on traffic collision while riding as one of two passengers in a Lyft ride-share vehicle. Cotton did not show signs of injury at the scene, but the vehicle sustained disabling damage and another passenger reportedly suffered a foot injury. Cotton's medical records reflected that his physicians diagnosed him with several conditions over a span of months beginning days after the June 2021 traffic collision. Many of the conditions were exhibited in radiological testing. Cotton reported that the conditions caused discomfort, including headaches, spinal pain, and extremity pain. Cotton's physicians did not explicitly opine that June 2021 traffic collision caused or exacerbated his conditions. Cotton, however, consistently attributed his discomfort to the June 2021 traffic collision, and his physicians treated his injuries and conditions with that understanding. For example, Cotton's radiologist noted in his impressions that Cotton had a whiplash injury. After the June 2021 traffic collision, Cotton received treatment including diagnostic testing, physical therapy, and compression therapy. In his application for no-fault benefits, Cotton also attributed his pain to the June 2021 traffic collision and stated that he did not have any other applicable insurance policies. In light of this evidence, there was a genuine issue of material fact as to whether Cotton's alleged injuries and medical treatment were causally related to the June 2021 traffic collision for purposes of the no-fault act.

The question, then, is whether the other provider plaintiffs' evidence could have been properly considered in the context of a summary disposition motion under MCR 2.116(C)(10). Indeed, Liberty argues that the trial court could not properly consider Cotton's statements documented in his medical records because they constituted inadmissible hearsay.

---

[1] Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, this Court may nonetheless consider such opinions for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307, 911 NW2d 219 (2017) (citation omitted).

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Merrow v Bofferding*, 458 Mich 617; 581 NW2d 696 (1998), quoting MRE 801(c). Hearsay evidence is inadmissible unless it comes within an established exception. *Merrow*, 458 Mich at 626, citing MRE 802.

In *Merrow*, 458 Mich at 629-630, our Supreme Court examined a nearly identical issue to the one at hand, albeit in the context of a medical record admitted at trial. There, the plaintiff argued that a portion of his medical record was wrongly admitted at trial because it contained his statement that he sustained an injury by putting his arm through a plate glass window while fighting with his girlfriend. *Id*. at 622. Our Supreme Court explained that the admission of the medical record implicated the concept of hearsay within hearsay. *Id*. at 626. The first level of hearsay was the medical record itself, which was admissible under MRE 803(6) as a record of a regularly conducted activity. *Id*. at 626-627. The second level of hearsay was the plaintiff's statement documented within the medical record. *Id*. at 629-630. The court concluded that the plaintiff's statement about his injury resulting from a broken plate glass window was admissible under MRE 803(4) because it was made for medical treatment or diagnosis. *Id*. at 630. The court further concluded that the plaintiff's statement about the fight with his girlfriend was inadmissible under MRE 803(4) because it was not reasonably necessary for his medical treatment or diagnosis. *Id*.

Here, like in *Merrow*, Cotton's medical records implicate the concept of hearsay within hearsay. The first level of hearsay are the medical records themselves, which are admissible under MRE 803(6) as records of a regularly conducted activity. The second level of hearsay are Cotton's statements regarding the June 2021 traffic collision, which are admissible under MRE 803(4) as statements reasonably necessary for diagnosis and treatment. Cotton's medical records therefore fall within an established hearsay exception such that they are admissible under MRE 802.[2]

In order to be properly considered for purposes of summary disposition, evidence must be substantively admissible but need not be admissible in form. *Bernard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). See also MCR 2.116(G)(6) ("documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion."). In other words, the trial court may consider evidence that would be admissible with a proper foundation. *Bernard Mfg Co, Inc*, 285 Mich App at 373. With a proper foundation, Cotton's medical records would be admissible under MRE 803(6), and Cotton's embedded statements regarding the June 2021 traffic collision would be admissible under MRE 803(4).

---

[2] We address the admissibility of the medical records in the context of our review of the trial court's summary disposition decision. Nothing in this opinion should be read as restricting the parties' ability to challenge the admissibility of this evidence at trial or in a motion in limine. See *Bernard Mfg Co, Inc*, 285 Mich App at 373 (identifying the distinct standards for considering evidence on summary disposition and at trial). Because the parties (and the trial court) did not focus their arguments on the nuances of the medical treatment hearsay exception, we have limited our review to the threshold question of admissibility necessary to address the (C)(10) motion.

In sum, to the extent that the trial court granted Liberty's summary disposition motion based on the provider plaintiffs' alleged failure to establish a genuine issue of material fact that Cotton's injuries and medical treatment were causally related to the June 2021 traffic collision, it erred in part. With the exception of A to Z, the provider plaintiffs presented admissible evidence that established a genuine issue of material fact that Cotton's alleged injuries and medical treatment were causally related to the June 2021 traffic collision for purposes of the no-fault act.

## B. FEE SCHEDULE CAPS

To the extent that the trial court granted Liberty's summary disposition motion based on the provider plaintiffs' alleged failure to comply with the fee schedule caps set forth in MCL 500.3157, it erred.

"The no-fault act is Michigan's statutory framework for insurance coverage, compensation, and dispute resolution related to motor vehicle accidents." *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362094); slip op at 4, citing MCL 500.3101 *et seq.* "Its goals are to provide individuals injured in motor vehicle accidents with assured, adequate, and prompt recovery, minimize administrative delays and factual disputes, and moderate the costs to the individual and to the system." *True Care Physical Therapy, PLLC*, ___ Mich App at ___; slip op at 4. In 2019, the Legislature amended the no-fault act in an attempt to control the cost of automobile insurance. *Andary v USAA Cas Ins Co*, 512 Mich 207, 214; 1 NW3d 186 (2023). As part of these reforms, the Legislature amended MCL 500.3157 to include fee schedules, which capped the amount reimbursable to medical providers or persons rendering treatment to an injured person for an accidental bodily injury under the no-fault act. See MCL 500.3157(1) and (2). In relevant part, the statute provides:

> (1) Subject to subsections (2) to (14), a physician, hospital, clinic, or other person that lawfully renders treatment to an injured person for an accidental bodily injury covered by personal protection insurance, or a person that provides rehabilitative occupational training following the injury, may charge a reasonable amount for the treatment or training. The charge must not exceed the amount the person customarily charges for like treatment or training in cases that do not involve insurance.

> (2) Subject to subsections (3) to (14), a physician, hospital, clinic, or other person that renders treatment or rehabilitative occupational training to an injured person for an accidental bodily injury covered by personal protection insurance is *not eligible for payment or reimbursement under this chapter for more than the following*:

> (a) For treatment or training rendered after July 1, 2021 and before July 2, 2022, 200% of the amount payable to the person for the treatment or training under Medicare.

> (b) For treatment or training rendered after July 1, 2022 and before July 2, 2023, 195% of the amount payable to the person for the treatment or training under Medicare.

(c) For treatment or training rendered after July 1, 2023, 190% of the amount payable to the person for the treatment or training under Medicare. [MCL 500.3157(1) and (2) (emphasis added).].

By its plain terms, the statute provides that medical providers may only charge reasonable amounts for their services and are not eligible for reimbursement for charges that exceed certain statutory limits.

Here, Liberty argued that the provider plaintiffs' claim wholly failed as a matter of law because the provider plaintiffs failed to present evidence that their charges were reasonable or otherwise fell within the fee schedule caps set forth in MCL 500.3157. Yet, under MCL 500.3157(2), if the provider plaintiffs' charges exceeded the fee schedule caps, then they would not be eligible for reimbursement for only the excess portion of the charges. For this reason, MCL 500.3157 may have provided a basis for partial summary disposition in relation to the portion of the provider plaintiffs' charges that exceeded the fee schedule caps but did not provide a basis for summary disposition as a whole. Therefore, to the extent that the trial court granted Liberty's summary disposition motion based on the provider plaintiffs' alleged failure to comply with the fee schedule caps set forth in MCL 500.3157, it erred. And, as an error-correcting court, this Court's review is generally limited to matters actually decided by the trial court. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). Because the trial court did not explicitly determine as a matter of law that the provider plaintiffs' charges were unreasonable or otherwise exceeded the fee schedule caps set forth in MCL 500.3157, we decline to do so in the first instance.

## IV. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood