*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TABETHA ARGEL, also known as TABETHA
PINK and TABETHA CORDELL,

UNPUBLISHED
January 27, 2022

        Plaintiff/Counterdefendant-
        Appellee,

v

No. 357494
Jackson Circuit Court
LC No. 16-001097-DM

GEORGE ELLIOTT ARGEL,

        Defendant/Counterplaintiff-
        Appellant.

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

In this child custody dispute, defendant, George Argel, appeals by right the trial court's order denying his request for an evidentiary hearing to consider whether to alter the custody applicable to his minor daughter, AA. Because Argel has not demonstrated that the trial court erred in any way that warrants relief, we affirm.

## I. BASIC FACTS

This is Argel's fourth appeal in this Court. As this Court noted in the appeal from the parties' judgment of divorce, Argel and Tabetha Cordell,[1] were married in Texas in December 2012. They had AA in January 2014. Argel agreed to move to Michigan after Cordell's parents moved to this state. However, Cordell left the marital home with AA in March 2016 and

---

[1] Tabetha Argel has since remarried and now goes by the name Tabetha Cordell. For ease of reference, we refer to her as Cordell.

later sued for divorce. The parties disputed matters involving child custody and parenting time. While the divorce was still pending, Argel relocated to Texas.[2]

A panel of this Court affirmed the judgment of divorce in June 2018. *Argel v Argel*, unpublished per curiam opinion of the Court of Appeals, issued June 12, 2018 (Docket No. 340148). A panel of this Court also affirmed an order denying Argel's request to change the child's custody in December 2018. *Argel v Argel*, unpublished per curiam opinion of the Court of Appeals, issued December 20, 2018 (Docket No. 344836).

In August 2018, Argel moved to suspend Cordell's parenting time. He alleged that AA had an outburst in which she engaged in self-injurious behavior. He also alleged that AA told him that her mother had struck her in the head. Because Argel did not return AA to Michigan for her parenting time with Cordell, Cordell moved for an order to show cause why Argel should not be held in contempt. The trial court then ordered Argel to return AA to Michigan pending the results of an investigation.

In January 2019, Argel again moved for a change in legal and physical custody of AA. He argued that the change in custody was necessary for AA's safety. He alleged that, in July 2018, AA engaged in "extremely concerning behavior" in which she struck her head repeatedly and stated that that was what her "mommy" did to her. AA's self-injurious behaviors continued, he wrote, and she also experienced bathroom accidents, night terrors, and extreme reluctance to return to Michigan for visits with Cordell. He presented evidence that AA confirmed her reports of physical abuse to three investigators and told one investigator with children's protective services (CPS) that she had witnessed domestic violence between Cordell and Cordell's then boyfriend. Argel also alleged that Cordell had done other things to destabilize AA's home life, which he felt warranted a custody review. Argel attached photos, videos, e-mails, a CPS report, a mental health report, and other documentation in support of his motion.

The trial court held a hearing on the motion in February 2019 and signed an order denying Argel's motion on March 1, 2019; the trial court entered a separate order dismissing the motion on March 20, 2019. After the trial court denied his motion for reconsideration, Argel appealed in this Court. While that appeal was pending, Argel continued to attempt to modify the parenting time schedule and prevent changes that might result from AA's upcoming entry into kindergarten.

In December 2019, this Court issued its opinion resolving Argel's appeal from the trial court's order denying his motion to hold a custody hearing. This Court examined Argel's motion and determined that Argel had presented evidence that, if true, would establish that there had been a change in circumstances sufficient to warrant revisiting custody. Accordingly, this Court determined that the trial court erred when it dismissed Argel's motion on the ground that his motion did not on its face meet the requirement for proper cause or a change of circumstance. A panel of this Court reversed the trial court's decision, vacated the trial court's orders dismissing Argel's motion for a change of custody, and remanded the case for an evidentiary hearing to consider Argel's evidence and determine whether that evidence established proper cause or a change of

---

[2] See *Argel v Argel*, unpublished per curiam opinion of the Court of Appeals, issued June 12, 2018 (Docket No. 340148), p 1.

circumstances that would warrant a custody hearing. See *Cordell v Argel*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 348686).

As a result of complications from the pandemic and other scheduling matters, the trial court did not hold the evidentiary hearing until April 2021. At a pretrial hearing, the parties stipulated that the lookback date for the evidence to be presented at the hearing on whether Argel had established proper cause or a change of circumstances would be February 15, 2018. The trial court then took evidence over two days.

After Argel rested his case, Cordell's lawyer moved for involuntary dismissal under MCR 2.504(B)(2). He argued that the trial court should examine the evidence submitted, should make findings of fact on that evidence, and should conclude that Argel failed to establish proper cause or a change of circumstances that would warrant a custody hearing. The parties disputed whether that court rule applied to the evidentiary hearing, but the trial court ultimately concluded that it did apply. The court then took a recess and when it returned, it made its findings of fact.

The trial court stated that there was no medical evidence to document that AA had been injured by abuse and no other evidence consistent with physical abuse. The court stated that it was concerned about AA's behavior changes, but it found Argel's mother to be credible when she stated that the last behavioral incident occurred in 2019. The court also gave little weight to a video from July 2018. The court explained that Argel and his mother used leading questions with AA that made the video less compelling.

The court found Cordell credible when she testified that she had not seen anyone hit AA and found that Cordell did not have any mental health concerns. It similarly stated that it was not concerned that Cordell had domestic instability in her life, and it found that Cordell moved to Saline as part of a normal life change.

The court also felt that Argel had not established that AA's night terrors or potty accidents—if they occurred at all—had any connection to Cordell. The trial court noted that Argel selectively left out information in his e-mails to Cordell. It was also suspicious about the circumstances of his decision to take AA to Dr. Nancy White, PhD.

The trial court concluded by stating that there was no evidence that Cordell had hit AA. The court determined that there were also no other changes in AA's life beyond normal life changes. For these reasons, the trial court determined that Argel had not established by a preponderance of the evidence proper cause or a change of circumstances that would warrant a custody hearing. Accordingly, it denied his motion.

The trial court entered an order granting Cordell's motion for involuntary dismissal and denying Argel's motion for a custody hearing on May 5, 2021. Argel then moved for reconsideration and disqualification of the trial court for bias. The trial court rejected Argel's claim of bias and denied Argel's motion for reconsideration.

Argel now appeals by right the trial court's order denying his motion for a custody hearing in this Court.

## II.  INVOLUNTARY DISMISSAL

### A.  STANDARD OF REVIEW

Argel first argues that the trial court erred when it applied MCR 2.504(B)(2) to resolve his motion because the rule—by its plain terms—only allows a trial court to render judgment against a plaintiff after the plaintiff presents his or her evidence and, he further maintains, he was not a plaintiff.  This Court reviews de novo whether the trial court properly selected, interpreted, and applied the relevant court rules.  *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015).

### B.  ANALYSIS

With the promulgation of GCR 1963, 504.2, our Supreme Court adopted a new procedure for involuntary dismissal of claims tried without a jury.  See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 504, comment 6, p 332 (recognizing that our Supreme Court introduced an innovation in Michigan practice with GCR 1963, 504.2).  The rule then provided:

> After the plaintiff has completed the presentation of his evidence to the court in any action tried without a jury, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. [GCR 1963, 504.2.]

Unlike the case with a motion for a directed verdict in a jury trial, the trial court had "to exercise his function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences"—that is, the plaintiff did not get the "advantage of the most favorable interpretation of the evidence." *Marderosian v The Stroh Brewery Co*, 123 Mich App 719, 724; 333 NW2d 341 (1983).  The purpose of the rule was to provide for the "early disposition of the case" when the plaintiff failed to "show any basis for relief" during his or her case-in-chief.  See *Serijanian v Assoc Material & Supply Co*, 7 Mich App 275, 279; 151 NW2d 345 (1967).

Our Supreme Court retained this rule with the adoption of the Court Rules of 1985.  The current rule provides:

> In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that on the facts and the law, the plaintiff has no right to relief.  The court may then determine the facts and render judgment against the plaintiff, or may decline to render judgment until the close of all the evidence.  If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in MCR 2.517.  [MCR 2.504(B)(2).]

GCR 1963, 504.2 applied only to judgment on claims, counterclaims, crossclaims, and third-party claims.  See GCR 1963, 504.2 and 504.3.  However, MCR 2.504(B)(2) applies to a broader range of actions tried without a jury: it applies to any "action, claim, or hearing."  Moreover, the procedure for involuntary dismissal under MCR 2.504(B)(2) also applies to actions

involving custody disputes. See MCR 3.201(A)(1) (stating that subchapter 3.200 applies to domestic relations actions, which include suits for divorce and custody disputes); MCR 3.201(C) (providing that, generally, the practice and procedure in domestic relations actions is governed by the provisions of the Michigan Court Rules). Accordingly, MCR 2.504(B)(2) applies to an evidentiary hearing to determine whether a movant has met the threshold for a custody hearing.

Although our Supreme Court continued to refer to the trial court's ability to render judgment against "the plaintiff" in MCR 2.504(B)(2), when the court rules are read together and with the goal of creating a harmonious whole, as this Court must do, see *Jenson v Puste*, 290 Mich App 338, 341-342; 801 NW2d 639 (2010), the most natural understanding is that the term "plaintiff" refers to the party who moved for a change of custody in cases involving the trial court's continuing jurisdiction over a child's custody. That understanding is also consistent with the requirement that the rules be "construed, administered, and employed by the parties and the court to secure the just, speedy, and economical determination of every action." MCR 1.105.

In this case, Cordell sued for divorce, so she was the plaintiff in the divorce action and Argel was the defendant. The trial court had jurisdiction to try both the divorce and the parties' custody dispute as dispute ancillary to the divorce action. See MCL 552.16(1); MCL 722.27(1). Nevertheless, the trial court's judgment of divorce resolved the complaint for divorce and constituted a final judgment as to the divorce. See, e.g., *Zeer v Zeer*, 179 Mich App 622, 624-625; 446 NW2d 328 (1989) (recognizing that divorce judgments are final and generally unmodifiable). An order affecting custody may be modified under the circumstances provided under the child custody act and, for that reason, the trial court had continuing jurisdiction to resolve any new custody disputes. See MCL 722.27(1)(c) (providing that the circuit court that considered the original action retains jurisdiction to "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age"). Because the trial court had continuing jurisdiction, Cordell and Argel had to file any "new action concerning support, custody or parenting time of the same child" as a "motion in the earlier action if the relief sought would have been available in the original cause of action." MCR 3.204(A)(1).

The fact that the parties had to file the new action as a motion in the earlier action did not mean that the moving party retained his or her procedural label from the original action for all purposes. Rather, the moving party has—for purposes of MCR 2.504(B)(2)—the status that he or she would have if he or she filed a new action for custody, which would have been the case but for the requirement stated under MCR 3.204(A)(1). This understanding is consistent with the fact that the law places the ultimate burden of convincing the fact-finder on the party requesting the change in custody, see *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (stating that the party requesting a change in custody has the burden to establish proper cause or a change of circumstances before the trial court may hold a custody hearing), in the same way that it places the burden on a plaintiff asserting a typical civil claim, see, e.g., *Palenkas v Beaumont Hosp*, 432 Mich 527, 550; 443 NW2d 354 (1989) (stating that the ultimate burden of proof rests with the plaintiff). Additionally, applying MCR 2.504(B)(2) to a motion for a custody hearing encourages efficiency by allowing a trial court to resolve a dispute after the close of the moving party's case when it is clear that the moving party failed to meet his or her burden. *Serijanian*, 7 Mich App at 279. Consequently, when Argel moved to modify the custody award that was originally made in the judgment of divorce, he in effect became the plaintiff in a new custody action for purposes of applying MCR 2.504(B)(2). The trial court thus did not err when it determined that it could

assess the evidence that Argel presented in support of his motion and resolve that motion under MCR 2.504(B)(2).

Argel has also not demonstrated that, had Cordell put on her defense, the outcome would have been any different. Indeed, it is more likely that the trial court would have had additional testimony and evidence in support of its findings and determinations. Consequently, even if the trial court erred when it applied MCR 2.504(B)(2), that error would not warrant relief. See MCR 2.613(A).

## III. APPELLATE MANDATE AND JUDICIAL BIAS

### A. STANDARD OF REVIEW

Argel next argues that the trial court failed to follow this Court's instructions on remand and was biased against him. He maintains that the trial court revealed its bias through numerous erroneous evidentiary rulings at the hearing.

Whether a moving party has met the threshold requirement for a hearing required under MCL 722.27(1)(c) concerns a child custody dispute. This Court must affirm the trial court's order in a custody dispute unless the trial court "made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "A factual finding is against the great weight of the evidence if the evidence clearly preponderate[s] in the opposite direction such that the judgment is a miscarriage of justice." *Martin v Martin*, 331 Mich App 224, 234-235; 952 NW2d 530 (2020) (citation and quotation marks omitted). The trial court commits a clear legal error when it incorrectly chooses, interprets, or applies the law. *Id*. at 235. A trial court abuses its discretion on a child custody matter when its decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Id*.

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *Id*. However, this Court also reviews de novo as a question of law whether the trial court followed this Court's instructions on remand. See *Schumacher v Dep't of Natural Resources (After Remand)*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

### B. ANALYSIS

Argel first argues that the trial court did not comply with this Court's instructions on remand after this Court reversed the trial court's original order denying Argel's motion for a custody hearing. More specifically, Argel maintains that the trial court did not consider evidence that this Court required it to consider.

This Court's previous opinion reversing and remanding this case to the trial court constituted this Court's judgment. See MCR 7.215(E)(1). And, as this Court has explained, a trial court must strictly comply with this Court's judgment on remand:

> The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court. When an appellate court remands a case without instructions, a

-6-

lower court has the same power as if it made the ruling itself. However, when an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order. It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court. [*K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544-545; 705 NW2d 365 (2005) (citations omitted)]

In Argel's last appeal, a panel of this Court addressed whether the trial court properly denied Argel's motion for a custody hearing on the ground that Argel failed to establish proper cause or a change in circumstances on the face of his motion. After examining the allegations that Argel made in his motion and considering his offer of proof in support of that motion, the panel determined that the trial court erred when it decided the motion without holding an evidentiary hearing. See *Cordell v Argel*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 348686), pp 4-7.

The panel agreed that Argel failed to make an offer of proof establishing a question of fact as to some matters, such as whether Cordell had mental health problems, had made poor relationship choices that destabilized AA's home life, or made location moves that warranted a custody review. *Id*. at 4-5. The panel, however, recognized that Argel had also identified changes that might constitute proper cause or a change of circumstances that would warrant a custody hearing and made an offer of proof in support of those allegations. Namely, the panel noted that Argel had alleged that AA was engaging in disturbing behaviors, which included self-injurious behaviors, had told others that Cordell had hit her, and stated that she witnessed domestic violence. *Id*. at 5-6. The panel recognized that Cordell disputed those allegations but concluded that the trial court erred by deciding the matter without holding an evidentiary hearing because the trial court could not simply accept Cordell's "unsworn testimony" and disregard Argel's offer of proof, but instead had to hold a "hearing and make specific findings as to the underlying facts." *Id*. Accordingly, the panel vacated the trial court's order denying Argel's motion for a custody hearing and remanded the case to the trial court to hold an evidentiary hearing and give Argel the opportunity to establish by a preponderance of the evidence proper cause or a change of circumstances that would warrant a custody hearing. *Id*. at 7.

The panel also stated, as Argel notes on appeal, that the trial court improperly failed to consider the video evidence that Argel submitted with his motion. The panel observed that the videos "would be admissible" if Argel complied with the rules of evidence, such as MRE 401; MRE 402; and MRE 901. *Id*. at 6. Stated another way, the panel examined the potential admissibility of the videos in determining whether Argel had established the need for an evidentiary hearing to resolve a factual dispute over the threshold for holding a custody hearing. The panel did not, contrary to Argel's suggestion on appeal, instruct the trial court that the videos *must* be admitted on remand and did not otherwise provide the trial court with specific instructions on how it should handle the evidentiary hearing. Instead, the panel merely instructed the trial court to hold an evidentiary hearing to resolve whether Argel had met the threshold for holding a custody hearing. *Id*. at 7. The record shows that the trial court fully complied with the panel's instructions to hold an evidentiary hearing to determine whether Argel had established by a preponderance of the evidence grounds for holding a full custody hearing. See *K & K Constr, Inc*, 267 Mich App at 544-545.

Argel also argues that this Court must reverse and remand for a new hearing because the trial court was biased against him. Argel had a due-process right to have an unbiased and impartial decision-maker preside over his hearing. See *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). If Argel were to establish that the trial judge was biased or prejudiced for or against either party, he would be entitled to have the judge disqualified from hearing his motion. See MCR 2.003(C)(1)(a). To meet that criteria, Argel must establish that the trial judge had an actual bias that was personal and extrajudicial in nature; the bias must have its origins in events or sources outside the judicial proceeding. See *Cain*, 451 Mich at 495-496. Argel must also "overcome a heavy presumption of judicial impartiality." *Id*. at 497.

On appeal, Argel claims that the trial court's one-sided rulings and rush to change parenting time established that the trial judge was biased. Argel claims that the "doctrine of chances"[3] can be used to show that the repeated rulings against him are evidence of bias. That is not an accurate statement of the law; as this Court has explained, the "mere fact that a judge ruled against a litigant, even if the rulings are later determined to be erroneous, is not sufficient to require disqualification or reassignment." See *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). In any event, the record does not show that the trial court's rulings were one-sided or rushed.

This case involves a lengthy record in which the trial court made numerous decisions over a span of years. The court's rulings included some in Argel's favor. The court had, for example, previously ruled in Argel's favor on an earlier motion for a custody hearing and, although the trial court determined that Argel had not established grounds for changing custody at that hearing, it determined that he had established grounds for modifying parenting time. The trial court did proceed with a change in parenting time just before the hearing at issue here, but it did so because AA had reached school age and the previous order required the court to revisit custody at that time. Even during the hearing at issue, the trial court ruled in Argel's favor on some evidentiary issues. Accordingly, the record does not support Argel's contention that the trial court's rulings were one-sided, rushed, or otherwise evidenced bias.

Argel suggests that the trial judge actually admitted that she held a bias at the conclusion of the evidentiary hearing. Argel relies on a series of polite exchanges that occurred after the trial court gave its oral ruling. After the trial court's oral decision, Cordell's lawyer expressed his appreciation for Argel's professionalism during the hearing. The trial court agreed that Argel had performed admirably:

> And, and Mr. Argel, I've sort of been keeping this thought to myself but on a, I know we're still being recorded, but sort of on an off the record comment, you did such a phenomenal job in your presentation, I mean in your written brief, in your professional manner in which you presented the exhibits, the way you conducted yourself, I am wondering if you got your law degree down there in Texas since we last met face to face.

---

[3] See *People v Crawford*, 458 Mich 376, 392-395; 582 NW2d 785 (1998) (discussing the doctrine of chances).

When Argel indicated that he was interested in law school and had taken the entrance examination, the trial court wished him luck in his endeavor and remarked that it thought he would be "an amazing, outstanding lawyer." The court further confided that it was a bit humiliating to have been overturned on the basis of an appeal by a pro se litigant: "I mean I, I'll be blatantly honest with you. It's a little, you know, it's a little humiliating, so to speak, for a judge's ruling to get overturned by a self-represented litigant. And so I give you a lot of credit for that." After Argel apologized for any embarrassment, the trial court assured Argel that it had not understood Argel's appeal to have been personal: "No, I know it's not personal and it's not to be taken personal."

Nothing about these exchanges suggested that the trial court was biased or had prejudged Argel's motion. To the contrary, the exchanges suggest that the trial court had been impressed with Argel's performance and had thoughtfully and carefully considered the exhibits that he had presented. Argel's claim that the trial court deliberately misrepresented its remarks after the motion for reconsideration is also unfounded. When the trial court's remarks are fairly read in context, it is clear that the trial court expressed that it had not taken Argel's appeal in this Court personally.

The record demonstrates that the trial court was courteous and professional throughout the pretrial and two days of evidentiary hearings. The trial court gave Argel the opportunity to present his proofs and carefully applied the rules of evidence to his submissions. The trial court also considered Argel's arguments at various points and, although the court ruled against him on occasion, the record shows that the trial court thoughtfully applied the law to each dispute. The fact that the trial court ultimately determined that Argel had not met his burden of proof did not establish that the trial court held a bias against Argel. See *In re Contempt of Henry*, 282 Mich App at 680. Argel has not overcome the presumption of judicial impartiality. See *Cain*, 451 Mich at 497.

As part of his complaint that the trial court was biased and did not comply with this Court's instructions on remand, Argel complains that the trial court did not weigh certain evidence—such as the video from his dash camera and the videos from the parenting exchanges—or assess the credibility of certain witnesses in the way that he would have preferred. He also asserts that the trial court's explanations for its assessment of the weight and credibility that it assigned to testimony and evidence were inconsistent with the evidence. For example, Argel maintains that the trial court should have weighed the evidence that he did not fully inform Cordell about AA's behaviors in light of the evidence that Cordell had a mental health problem and that he censored his communications so as to minimize the danger that he might exacerbate Cordell's abuse. In a similar vein, Argel states that the trial court should not have considered how long ago the claims of abuse were made when weighing the evidence and should not have used the evidence that he recorded parenting exchanges as evidence that, had AA been engaging in disturbing behaviors, he would have recorded those behaviors. Argel characterizes these failures as misrepresentations and frauds committed by the trial court.

This Court defers to the trial court's assessment of the weight and credibility of the evidence. See *Berger v Berger*, 277 Mich App 700, 711; 747 NW2d 336 (2008), citing MCR 2.613(C). Argel's disagreement with the trial court's assessment of the weight and credibility to be afforded the evidence does not overcome the deference that this Court gives to the

trial court's findings. See *id*. Argel similarly has not offered any discussion of the evidence actually admitted and has not argued that any specific finding was contrary to the great weight of the evidence. Accordingly, to the extent that he might be arguing that the trial court's specific findings were contrary to the great weight of the evidence, he has abandoned those claims of error on appeal. See *id*. at 712.

Also within his argument about the trial court's alleged bias, Argel maintains that the trial court erred when it refused to admit certain evidence. He argues, for example, that the trial court erred when it refused to admit the video recording of the forensic interview that AA had at Safe Harbor because AA's statements in the video were admissible under various exceptions to the hearsay rule. The trial court, however, refused to admit the video because Argel failed to call a witness who could authenticate the video, see MRE 901(b), or had otherwise not established that it was made in the course of regularly conducted business activity, see MRE 803(6). At the hearing, Argel asserted that the video was self-authenticating because it was from a reliable source and recorded an interview that he knew took place. On appeal, Argel suggests additional grounds for allowing the video, but those grounds were not before the trial court during the hearing. On the record before this Court, it cannot be said that the trial court abused its discretion when it refused to admit the video of the interview. See *Martin*, 331 Mich App at 235.

The same is true for Argel's claims involving the medical records from Tri-County Psychiatric. Although the record itself might have been admissible as a record made in the course of regularly conducted business activity, Argel had to establish the fact that it was compiled and kept in the course of regularly conducted business activity through someone with firsthand knowledge of the entity's practices. See *Merrow v Bofferding*, 458 Mich 617, 626-627; 581 NW2d 696 (1998). Argel maintains that the trial court should have authenticated the record on the basis of an affidavit. The trial court could have relied on an affidavit to establish that the records met the requirements of MRE 803(6). See MRE 104(a). Nevertheless, the trial court rejected the records because the affidavit appeared to have been signed after the records were sent, which suggested a problem with the chain of custody. It is also not clear that the other statements recorded within the record would be admissible under another exception. See *Merrow*, 458 Mich at 628-630 (discussing hearsay within hearsay). Consequently, the trial court's decision to exclude the records on the information before it did not amount to an abuse of discretion. See *Martin*, 331 Mich App at 235.

Argel similarly maintains that the trial court erred when it determined that Dr. White could not testify as an expert on Quantitative Electroencephalography (QEEG) because her testimony did not establish that she was an expert in a recognized field of expertise. Argel argues that the trial court should have determined whether Dr. White was qualified on the basis of evidence beyond the testimony that was read into the record, such as his supplemental brief.

The trial court had an obligation to ensure that Dr. White was qualified to offer expert testimony and, as the proponent of Dr. White's testimony, Argel had the burden to establish that her testimony met the requirements of MRE 702. See *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 788-791; 685 NW2d 391 (2004). Argel did not submit testimony or other evidence at the hearing that would permit the trial court to find that Dr. White met the threshold requirements for offering expert testimony—namely, that she was an expert in the field and that the data and

methodology underlying her testimony were reliable. See *Elher v Misra*, 499 Mich 11, 22-23; 878 NW2d 790 (2016).

At the evidentiary hearing, Argel relied on Dr. White's credentials and her self-identification as an expert to establish that she met the requirements of MRE 702. The trial court rejected Dr. White's proposed expert testimony on the ground that it was inadequate to establish her expertise by self-identifying as an expert. The trial court also determined that there was inadequate testimony and evidence to establish that Dr. White's data and methodology were reliable. On the record before it, the trial court did not err. It was not sufficient for Argel to point to Dr. White's credentials alone to satisfy MRE 702. See *Elher*, 499 Mich at 23. There was also no evidence in the record establishing whether QEEG could be reliably used to diagnose head trauma or other disorders. Cf. *Hernandez v Florida*, 180 So 3d 978, 1006-1010 & 1007 n 11 (Fla, 2015) (discussing expert testimony about QEEG and listing court decisions rejecting its validity).[4] Accordingly, the trial court did not abuse its discretion when it refused to allow Dr. White's testimony to be read into the record. See *Martin*, 331 Mich App at 235.

Argel also faults the trial court for precluding Natalie Masin from testifying because she was not listed on Argel's witness list. Argel maintains that the trial court should have allowed Masin to testify or should have allowed the admission of a transcript of her previous testimony. The trial court had the discretion to exclude Masin's testimony on the ground that she was not properly listed on Argel's witness list. See *Gillam v Lloyd*, 172 Mich App 563, 584; 432 NW2d 356 (1988). Argel does not discuss on appeal why he did not list her on his witness list, has not identified the testimony that she would have offered beyond stating that she would have corroborated Argel's testimony about AA's behaviors, and has not analyzed the balance of interests or alternative sanctions that might be relevant to the trial court's decision to exclude her as a witness. See, e.g., *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). In the absence of additional analysis, it cannot be said that the trial court abused its discretion when it disallowed Masin's testimony. See *Martin*, 331 Mich App at 235.

Argel also states that the trial court erred when it refused to allow him to admit his e-mails to impeach Cordell's credibility. Argel apparently submitted the e-mails in an effort to impeach Cordell by demonstrating that she had in the past made misrepresentations about the information supplied by Argel. More specifically, he wanted to show that he had sent Cordell e-mails before a hearing held in 2019, which—if she read them, understood them, and recalled them by the time of the hearing—would show that he informed her about AA's behaviors before Cordell testified at the hearing in 2019. That evidence would then presumably allow an inference that Cordell misrepresented her knowledge at the 2019 hearing, which in turn would permit an inference that she might also be misrepresenting the facts at the 2021 hearing.

Contrary to Argel's contention on appeal, his e-mails could not be used to rebut a recent charge of fabrication because Cordell had not explicitly or impliedly charged him with having made up testimony about AA's behaviors at the hearing at issue. See MRE 801(d)(1)(B) (stating that a prior statement of a witness submitted to rebut a charge of recent fabrication is not hearsay).

---

[4] Foreign authorities are not binding on this Court, but may be persuasive. See *Franks v Franks*, 330 Mich App 69, 97 n 4; 944 NW2d 388 (2019).

The implied charge of fabrication must relate to testimony at the hearing. See *People v Jones*, 240 Mich App 704, 710-712; 613 NW2d 411 (2000).

Argel also suggests that his e-mails should have been admitted as a memorandum of the events that he described in the e-mails. See MRE 803(5). However, the record shows that Argel was not submitting the e-mails because he lacked sufficient recollection of the events; instead, it appeared that he wanted to admit the e-mails to bolster his own credibility and weaken Cordell's credibility. On the record before the trial court, Argel had not established the prerequisites for admission under MRE 803(5). He thus has not shown that the trial court abused its discretion when it refused to admit the e-mails on the grounds asserted at the hearing. See *Martin*, 331 Mich App at 235.

In summary, Argel has not shown that the trial court failed to comply with this Court's instructions and has not demonstrated that the trial court was biased or otherwise prejudged his case.

## IV. FINDINGS

For his final claim of error, Argel maintains that the trial court erred when it determined that he had not established proper cause or a change of circumstances that warranted a full custody hearing. See MCL 722.27(1)(c). Argel indicates that this Court should independently review the record and find that he established by a preponderance of the evidence proper cause or a change of circumstances that would warrant a full custody hearing. This Court is, however, an error correcting Court—not a trial court. See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 210; 920 NW2d 148 (2018). It is not this Court's place to make findings of fact or resolve credibility disputes. See *Nicpon v Nicpon*, 9 Mich App 373, 377-378; 157 NW2d 464 (1968). Instead, this Court must defer to the trial court's assessment of the weight and credibility of the testimony and evidence. See MCR 2.613(C). Accordingly, we decline Argel's invitation to evaluate the weight and credibility of the evidence and make our own findings.

Argel also discusses the trial court's earlier handling of allegations that Cordell made against him. He suggests that, if the trial court were to be consistent, it should have accepted his allegations of abuse as sufficient to revisit custody. Argel then argues that this Court must either conclude that the trial court's disparate treatment amounted to bias or must conclude that both decisions were erroneous. This argument is inadequate to establish a ground for relief. As already discussed, Argel has not established bias. Additionally, Argel has not discussed the evidence actually presented in the trial court and has not discussed the trial court's specific findings of fact or its assessments of the weight and credibility to be afforded the testimony and evidence. He simply asserts that the trial court should have reached a different result. By failing to offer a meaningful discussion of the law and evidence, Argel has abandoned his claim that the trial court clearly erred in its findings. See *Berger*, 277 Mich App at 712.

Affirmed. As the prevailing party, Cordell may tax her costs. MCR 7.219(A).

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick