*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R. GRAYSON, Minor.

UNPUBLISHED
September 23, 2024
9:33 AM

No. 368427
Genesee Circuit Court
Family Division
LC No. 22-138342-NA

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Nonrespondent mother appeals as of right the order of adjudication dismissing the petition filed against respondent-father and placing their child, RG, into protective custody. We affirm, but remand for the ministerial task of amending the order on appeal.

Petitioner, the Department of Health and Human Services, filed a petition against respondent, alleging that he sexually abused RG. Specifically, the petition alleged that RG disclosed that respondent sexually abused her by putting his "crotch stick" into her mouth, vagina, and buttocks. Respondent waived the probable-cause determination, and the trial court authorized the petition and placed RG with mother. At trial, which mother did not attend, multiple witnesses presented evidence suggesting that mother coached RG to fabricate the allegations of sexual abuse, engaged in behaviors to alienate RG from respondent, and refused to bring RG to visits with respondent. Based on that testimony, the trial court dismissed the petition against respondent, removed RG from mother, and placed RG into temporary protective custody with petitioner. In the order of adjudication, the trial court noted that it would enter an emergency order for change of custody in the domestic case, which was simultaneously pending before the same court. The following day, the trial court entered the emergency order for change of custody in the domestic case.

## I. NOTICE

On appeal, mother argues that the trial court violated her due-process rights by failing to notify her of the trial, after which the trial court dismissed the petition against respondent and

-1-

placed RG into protective custody. We conclude that mother failed to demonstrate that the trial court clearly erred when it found she had notice of the trial.[1]

"Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). "A trial court's factual findings are reviewed for clear error." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

Pursuant to MCR 3.921(B)(1)(d), the trial court was required to notify mother of the trial.[2] On June 21, 2023, the trial court entered an order adjourning the trial to September 20, 2023. The lower court record contains a proof of service that indicates mother and respondent were served with the order of adjournment in court on June 21, 2023, thereby giving them notice of the upcoming trial. In the order of adjudication, the trial court found that mother received notice of the trial.

Mother claims that, though she was present at the June 21, 2023 hearing, she did not receive the order of adjournment and the proof of service stating otherwise is inaccurate. To corroborate that the proof of service is unreliable, mother (and her mother) aver that respondent was not present for the June 21, 2023 hearing, making the proof of service inaccurate where it states that respondent was served with the order of adjournment while in the courtroom on June 21, 2023. Additionally, mother alleges that the trial court noted respondent's absence from that hearing on the record. However, nothing in the transcript from the June 21, 2023 hearing indicates respondent was absent.

---

[1] The parties dispute whether mother has standing to challenge the order of adjudication. This Court "has jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule." MCR 7.203(A)(2). The order of adjudication is appealable by right because it removed RG from mother's care by placing her into protective custody. See MCR 3.993(A)(1) (stating that "any order removing a child from a parent's care and custody" is appealable by right). Further, mother was an aggrieved party to the order of adjudication because the order bore directly on her interest in keeping RG in her care and custody. See *In re Farris/White*, 340 Mich App 619, 626; 987 NW2d 912 (2022) ("A party is aggrieved by a judgment or order when it operates on his rights and property or bears directly on his interest.") (quotation marks and citation omitted). Mother was aggrieved by the order of adjudication and the order is appealable by right, so mother has standing to appeal the order of adjudication.

[2] In her statement of the issues presented, mother summarily states that her due-process rights were violated if she was not given proper notice. However, she does not proceed to raise a constitutional argument in her brief, and only disputes whether the trial court complied with the relevant court rules governing notice. Accordingly, mother abandoned any constitutional argument associated with notice. See *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (explaining that, when "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned") (quotation marks and citation omitted).

Moreover, even if mother could demonstrate that the proof of service was inaccurate with respect to respondent's service, that does not necessarily indicate it was inaccurate with respect to mother's service.

To prevail on this issue, mother must demonstrate that the trial court clearly erred when it found that she received proper notice of the trial. *Benavides*, 334 Mich App at 167. Mother's affidavit, even when paired with an identical one from the maternal grandmother, is insufficient to create a firm conviction that the trial court erred when it found mother received notice of the trial, especially since the signed proof of service indicates that mother was served with the order of adjournment, and mother (and the maternal grandmother) agreed that mother was present for the June 21, 2023 hearing, making it possible that mother received a physical copy of the order of adjournment. Nor does the fact that mother did not attend trial necessarily indicate that she lacked notice, because mother was not a respondent to the petition at issue during trial, and at the time of trial mother had been in violation of the trial court's visitation order for five months, opening the possibility that she may not have wanted to appear before the trial court. Indeed, the trial court noted that mother sought to avoid and ignore court orders throughout the entire case. Therefore, we conclude that mother failed to provide sufficient evidence to demonstrate that the trial court clearly erred when it found she had notice of the trial.[3]

## II. EVIDENTIARY ISSUES

Mother also argues that the trial court committed plain error by considering at trial inadmissible hearsay evidence. We conclude that, though the trial court plainly erred by relying on hearsay testimony to support its ruling in the order of adjudication, mother failed to demonstrate that the plain error affected her substantial rights.

As mother concedes, this issue is not preserved because she did not raise any evidentiary objection at trial. See *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). We review unpreserved arguments for plain error affecting the appellant's substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). The appellant "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). "Generally, an error affects

---

[3] While it is true that the trial court stated on the record at the adjournment hearing that trial would be on November 20, 2023, the written order indicated that the trial would be on September 20, 2023. MCR 3.921(B)(1)(d) states that parents must be notified in writing of upcoming child protective proceedings. Because the trial court did not clearly err by finding that mother received *written* notice of the proper date for the trial, the requirement of MCR 3.921(B)(1)(d) was satisfied, regardless of what the trial court stated on the record.

substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).[4]

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *Sanders*, 495 Mich at 404. During the adjudicative phase, the rules of evidence for a civil proceeding apply, and the standard of proof is a preponderance of the evidence. *Id.* at 405. Hearsay is inadmissible unless the rules of evidence provide otherwise. MRE 802.[5] Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).

Mother alleges that the trial court improperly considered three pieces of hearsay testimony from Melanie Gallego, a Children's Protective Services investigator, in reaching its decision at trial. First, Gallego testified that Cindy Galvin, RG's paternal grandmother, told her that mother coached RG regarding what to say about the condition of respondent's house. This testimony recounting Galvin's out-of-court statement was offered to prove the truth of the matter asserted— that mother coached RG on what to say, making it impermissible hearsay. Second, Gallego testified that a former caseworker told her that mother took RG for a physical examination which produced no findings of sexual abuse. This testimony was hearsay because it recounted the caseworker's out-of-court statement to Gallego in an attempt to prove the truth of the matter asserted. Gallego also testified that her own investigation revealed that RG's medical examinations contained no evidence of sexual abuse. Gallego presumably gained this information when she read RG's medical reports. Information from medical reports is generally considered hearsay, but can often be admitted if the custodian or another qualified witness certifies that the medical record complied with the requirements of MRE 803(6). See *Merrow v Bofferding*, 458 Mich 617, 625-627; 581 NW2d 696 (1998). Since no qualified individual offered testimony to certify that the contents of the medical record complied with MRE 803(6), Gallego's testimony concerning the contents of the medical records was inadmissible hearsay. Finally, Gallego also testified that the doctor who examined RG told Gallego that he was unable to find any evidence of sexual abuse when he examined RG, was bothered by the video mother showed him, and called the video "spooky." It was plain error for the trial court to allow this hearsay testimony to be presented at trial.

However, mother failed to demonstrate that this plain error affected the outcome of the proceeding because the trial court's decision to place RG into protective custody was supported by sufficient, independent and admissible evidence. The presence of potentially inadmissible hearsay testimony does not affect the outcome of the trial where the inadmissible evidence is corroborated by admissible evidence. Further, "[a] trial judge is presumed to know the law," which would include the ability to sift through admissible and inadmissible evidence before issuing a

---

[4] The plain-error standard applies to termination of parental rights appeals. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 5 n 3.

[5] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion relies on the version of the evidentiary rules in effect at the time of trial.

ruling. *In re SB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367014); slip op at 9 (quotation marks and citation omitted).

First, the trial court did not base its ruling on the hearsay testimony that RG was coached about how to describe respondent's house. Rather, the only "coaching" testimony that the trial court used to reach its conclusion was Gallego's opinion that RG may have been coached to say that respondent sexually abused her. The trial court was permitted to rely on this testimony because it was premised on Gallego's own observation that RG was pleased after telling Gallego about the "crotch stick," and appeared excited when she reported to mother and maternal grandmother that she had "told everything." Since the trial court did not rely on Gallego's hearsay testimony about coaching in reaching its decision, mother cannot demonstrate that the trial court's plain error in allowing this testimony at trial affected the outcome of the proceeding.

Second, the trial court based its ruling in part on the fact that there was no medical evidence that RG was sexually abused. The trial court's plain error of allowing Gallego to present hearsay statements attributable to another caseworker and medical records did not affect the outcome of the trial because the trial court could have made the same finding—that there was no medical evidence of sexual abuse—on the basis of petitioner's failure to present such evidence at trial. Petitioner was responsible to prove by a preponderance of the evidence that one or more statutory grounds for exercising jurisdiction existed. *Sanders*, 495 Mich at 405. Nonetheless, petitioner was unable to offer any medical evidence substantiating the sexual abuse allegations, which it surely would have done if any existed. In other words, the trial court did not need Gallego's hearsay testimony to conclude that petitioner failed to provide corroborating medical evidence because the trial court could observe for itself this shortcoming in petitioner's proofs. Therefore, the trial court's plain error of allowing Gallego's hearsay testimony about the lack of medical evidence did not affect the outcome of the proceeding.

Third, when listing the facts on which its ruling was based, the trial court recounted Gallego's hearsay testimony about the doctor's opinion of the video being "spooky" and mother and maternal grandmother being heavily invested in the case. However, the trial court's erroneous reliance on this testimony did not affect the outcome of the lower court proceeding because there was sufficient admissible evidence supporting the trial court's decision to place RG into protective custody.

For example, RG's inability to describe what a "crotch stick" was, her excitement after telling Gallego about the sexual abuse, her satisfaction in telling mother and maternal grandmother that she "told everything," and the lack of medical evidence suggesting RG was sexually abused, indicated RG may have been coached to fabricate the sexual abuse. Additionally, RG also relayed that mother told her to "only tell," but then RG could not describe what that meant. RG also stated there was something that she could not tell Gallego because mother would become upset. Mother's behavior also had a chilling effect on RG's relationship with respondent. When mother became upset about the toy respondent gave RG, RG quickly called the toy she had been excited about stupid. Mother also stopped taking RG to court-ordered visits with respondent. The foregoing admissible evidence indicates that the trial court did not clearly err when it found reasonable cause to believe RG was at a substantial risk of harm and needed to be removed from mother immediately, and that RG's continuing residence at mother's home was contrary to RG's welfare. MCR 3.963(B)(1)(a) and (e). Moreover, the order for protective custody was warranted because

the evidence of possible parental alienation, and mother's refusal to follow court orders, gave the trial court a reasonable belief that mother may attempt to abscond with RG after learning that her custodial rights were going to be changed. Accordingly, the trial court did not clearly err by finding, based on admissible evidence, that the protective custody order was appropriate and necessary. MCR 3.963(B)(1)(b) and (d).[6]

### III. DOMESTIC RELATIONS CASE

Finally, mother argues that the trial court erred by modifying the custody arrangement where clear and convincing evidence did not support the decision and the trial court failed to weigh the best-interests factors. However, while the trial court may have based its order in the domestic case on the findings made at trial in the child protection case, the legitimacy of the emergency order for change of custody issued in the domestic case is not before this Court because mother did not appeal that order. See *In re KMN*, 309 Mich App 274, 296; 870 NW2d 75 (2015). The appeal in this matter was only on the order entered in the child protective proceeding, so the correctness of the trial court's emergency order for change of custody in the domestic case is not before this Court. However, to the extent the September 20, 2023 order attempts to modify custody in the domestic relations matter, the circuit court shall remove that language from the order.

Affirmed, but remanded for the ministerial task of modifying the order as indicated above.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[6] We also note that, prior to removing RG, petitioner had multiple caseworkers investigate the case, filed a petition against respondent, allowed RG to remain with mother while the investigation was pending, ordered RG to attend therapy, and sent workers to speak with RG. The trial court only entered the order for protective custody after mother became noncompliant with court orders, the trial court found the accusations of sexual abuse against respondent were unsubstantiated, and evidence was presented that indicated mother was likely alienating RG from respondent. In light of the foregoing, the trial court did not clearly err when it concluded petitioner made reasonable efforts to prevent or eliminate the need to remove RG from mother. MCR 3.963(B)(1)(c).